UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


DENISE PETRINE BENDZIK,            )        CASE NO. 1:12CV730
                                   )
            Plaintiff,             )        UNITED STATES MAGISTRATE JUDGE
                                   )        GEORGE J. LIMBERT
v.                                 )
                                   )
                                   )
CAROLYN W. COLVIN[1],              )        **MEMORANDUM OPINION & ORDER**
ACTING COMMISSIONER OF             )
SOCIAL SECURITY,                   )
                                   )
            Defendant.             )


        Denise Petrine Bendzik ("Plaintiff") seeks judicial review of the final decision of Carolyn

W. Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying

her application for Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  For the following reasons,

the Court REVERSES the ALJ's decision and REMANDS the decision for reevaluation and further

analysis and application in accordance with the treating physician rule. This in turn also requires

reevaluation and analysis of the ALJ's credibility determination and his determination at Steps Four

and Five of the sequential steps to evaluate Plaintiff's entitlement to DIB.

**I.      PROCEDURAL AND FACTUAL HISTORY**

        On November 4, 2008, Plaintiff applied for DIB alleging disability beginning on January 20,

2006, due to bipolar disorder and major depression.  ECF Dkt. #12 ("Tr.") at 114-124, 134.[2]  The

SSA denied Plaintiff's application initially and on reconsideration. Tr. at 60-68.  Plaintiff requested

an administrative hearing, and on March 23, 2011, an ALJ conducted an administrative hearing and

accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE").

---

        [1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security,
replacing Michael J. Astrue.

        [2]References to the administrative record in this case refer to the ECF docket number of the cited
document and the page number assigned to cited pleading by the ECF system, which can be found in the
search box at the top of the page on the ECF toolbar.

Tr. at 36-53, 77.  In a decision dated May 6, 2011, the ALJ found that Plaintiff was not disabled and therefore not entitled to DIB.  *Id.* at 22-31.  Plaintiff filed a request for review of the ALJ's decision, but the Appeals Council denied the request on January 24, 2012.  Tr. at 4-7, 17.

On March 26, 2012, Plaintiff filed the instant suit appealing the ALJ's decision.  ECF Dkt. #1.  On August 20, 2012, Plaintiff filed a brief on the merits.  ECF Dkt. #15.  On October 4, 2012, Defendant filed a brief on the merits.  ECF Dkt. #17.  Plaintiff filed a reply brief on October 17, 2012. ECF Dkt. #18.

## II.    RELEVANT MEDICAL HISTORY

On May 2, 2006, a progress note from Dr. Deeb, Plaintiff's primary care physician, indicated that Plaintiff had a history of depression and anxiety and he noted that the Paxil he had prescribed was not working for her.  ECF Dkt. #12 at 345.  Plaintiff stated that she felt a little anxious and she was tearful at the appointment.  *Id.*  She reported decreased interest in activities and energy, and had feelings of guilt, agitation, irritability and anxiety.  *Id.*  Dr. Deeb diagnosed depression and prescribed Zoloft and advised her to continue researching to find a new psychiatrist.  *Id.*

On November 21, 2006, Dr. Deeb indicated in his progress note that Plaintiff reported that the medications for anxiety and depression were not helping her.  ECF Dkt. #12 at 208.  Plaintiff indicated that she stopped taking Zoloft after two months because it was not helping.  *Id.* at 209.  She reported decreased energy, sleep, and concentration, and increased anger in the evening and extreme irritability.  *Id.*  She indicated that she could become suicidal if she continued the way she was feeling.  *Id.*  Dr. Deeb diagnosed depression, started Plaintiff on Cymbalta, gave her Xanax, and referred her to psychiatry.  *Id.*

On February 1, 2007, Plaintiff presented to the emergency room complaining of depression and a fear of harming her children when getting angry.  ECF Dkt. #12 at 225.  She was admitted to the hospital and had asked to be released within twenty-four hours of her admission, but the doctor suggested that she remain hospitalized due to her score on the Beck Depression Inventory test.  *Id.*  She stayed and was discharged on February 5, 2007 after receiving medication, attending group therapy and retaking the Beck Depression Inventory test.  *Id.* at 226.

On March 16, 2007, Plaintiff was referred to the Cleveland Clinic for a chemical dependency assessment. ECF Dkt. #12 at 278. She was diagnosed with alcohol and cocaine abuse and while it was recommended that she seek intense outpatient treatment, Plaintiff advised that she would attend AA. *Id.* at 284.

An April 16, 2007 progress note from Dr. Deeb indicated that Plaintiff was seen for follow up of her depression. ECF Dkt. #12 at 208. Dr. Deeb reported that Plaintiff was anxious, but denied suicidal thoughts, and he refilled her medications and gave her a prescription for Xanax until she had her follow-up with psychiatry. *Id.*

From June 21, 2007 through July 5, 2007, Plaintiff participated in an inpatient detoxification program at the Cleveland Clinic for alcohol dependence, cocaine abuse and major depressive disorder. ECF Dkt. #12 at 265. Upon discharge, Plaintiff attended psychotherapy with Ms. Stowe and Dr. Collins for her alcohol dependence and cocaine abuse. *Id.* at 261, 263.

Dr. Deeb's September 30, 2008 progress note indicated that Plaintiff had severe anxiety while taking 800 mg of Seroquel and she was not sleeping well. ECF Dkt. #12 at 206. He noted that Plaintiff wanted him to send her lawyer a letter as she was applying for social security benefits. *Id.* Dr. Deeb noted that Plaintiff was hospitalized in the past at the psychiatric floor of the hospital, she was known to have bipolar disorder and while she was not suicidal, she was severely depressed. *Id.* On October 3, 2008, Dr. Deeb wrote a letter indicating that Plaintiff suffered from bipolar disorder with severe depression and she was admitted to the psychiatric floor of the hospital. ECF Dkt. #12 at 213. He further noted that Plaintiff also had severe anxiety and he concluded that Plaintiff was not able to engage in any work. *Id.*

Plaintiff presented to the emergency room on October 14, 2008 complaining of worsening depression over the last several weeks. ECF Dkt. #12 at 239. She reported having passive suicidal thoughts and then a plan to overdose. *Id.* Plaintiff was admitted to the hospital and received increased dosages of medication and therapy. *Id.* She was discharged on October 20, 2008 with the diagnoses of bipolar disorder type 1 and a history of alcohol and cocaine dependence. *Id.* at 240.

On October 21, 2008, Plaintiff self-reported to the Cleveland Clinic for an assessment. ECF Dkt. #12 at 254. Ms. Judith Stowe and Dr. Collins assessed Plaintiff. *Id.* It was noted that Plaintiff

had prior chemical dependency treatment in July of 2007 at the Cleveland Clinic for two weeks for inpatient detoxification.  *Id.*  She was supposed to continue outpatient treatment but moved to New Mexico and had returned three to four months ago.  *Id.*  Plaintiff admitted that after one year of sobriety, she had relapsed upon her return to Cleveland and began drinking alcohol once a month and using cocaine.  *Id.*  She indicated that she had recently been admitted to the hospital for increased depression and anxiety, as well as for suicidal ideation, so she came to the Cleveland Clinic because she knew that drinking alcohol and using drugs were not good for her.  *Id.*  Dr. Collins diagnosed Plaintiff with alcohol and cocaine dependence and atypical depression, modified her medications, and recommended outpatient treatment.  *Id.* at 258-259.

.       On October 29, 2008, Plaintiff reported to Dr. Collins that she was doing poorly on Ambilify and he described her as irritable with manic traits.  ECF Dkt. #12 at 252.  He also noted that she reported using cocaine one week prior to the appointment.  *Id.*  He adjusted her medications.  *Id.*

On January 27, 2009, Dr. Collins' progress note indicated that Plaintiff did not complete her treatment program because she was caring for her husband who had back surgery.  ECF Dkt. #12 at 430.  She reported that she was not working and indicated that she did not know why she was not working.  *Id.*  She thereafter stated that she had a hard time getting up and going to work since she had her daughter because she had post-partum depression that had not gone away.  *Id.*  She stated that she had not been the same since she had her daughter.  *Id.*  She reported moodiness, crying, sleeping, and mood swings.  *Id.*  She also indicated that she was happier when she was working as she felt needed and important.  *Id.* Dr. Collins diagnosed mixed chemical dependence in remission, dysthmic disorder, and atypical bipolar disorder.  *Id.*

On February 26, 2009, Dr. Collins indicated in a progress note that Plaintiff reported her old boss had called her regarding returning to work and Dr. Collins recommended exploring the possibility.  ECF Dkt. #12 at 434-435.  Dr. Collins found Plaintiff's insight and judgment poor and he noted that she needed to free herself from the swamp of negativity surrounding her.  *Id.*  He diagnosed her as having bipolar disorder that was most recently manic moderate, combination drug dependence and dysthymic disorder.  *Id.* at 435.  He also noted that Plaintiff reported that she had

applied for social security disability benefits because she felt that she could not handle a job emotionally.  *Id*. at 438.

On March 10, 2009, Dr. Zerba, an agency examining psychologist, examined Plaintiff for the agency.  ECF Dkt. #12 at 309.  Plaintiff related to Dr. Zerba that she spent one year in prison because she used to live with a drug dealer.  *Id*. at 310.  She also reported that she worked as a bartender before,  but she quit because her drinking became excessive.  *Id*.  She also worked in data entry but was fired because she always arrived late to work.  *Id*.  She further stated that her husband had to remind her to take her medications and she forgets her appointments with her therapist and psychiatrist.  *Id*. Dr. Zerba noted that Plaintiff was cooperative but she sobbed nonstop throughout the interview.  *Id*.  She found Plaintiff to be depressed, with a flat affect, no suicidal or homicidal thoughts, no hallucinations or delusions, and no evidence of psychosis.  *Id*. at 310-312.  Dr. Zerba found Plaintiff to be within the average range of intelligence, but with limited to absent insight and fair to poor judgment.  *Id*. at 312.   Plaintiff related that she had no hobbies, no social life, and she had relapsed from sobriety from alcohol in 2008 after two years and had a history of cocaine use until the Fall of 2008.  *Id*.  at 313.  Plaintiff reported having nightmares, an inability to sleep, being depressed, and having anxiety and panic attacks.  *Id*. at 311.

Dr. Zerba diagnosed Plaintiff with major depressive disorder, panic disorder without agoraphobia, alcohol dependence in early partial remission and cocaine abuse in early partial remission.  ECF Dkt. #12 at 313.  She found Plaintiff to be unimpaired in her abilities to understand and follow directions and to pay attention to perform simple, repetitive tasks.  *Id*.  She opined that Plaintiff had moderate impairments in her ability to relate to others in the work environment and to withstand stress and pressures of daily work activity.  *Id*.

On March 16, 2009, Dr. Benninger, a state agency reviewing psychologist, completed a mental RFC assessment and found that Plaintiff was moderately limited in the areas of : understanding, remembering and executing detailed instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; working with others without being distracted by them; completing a normal workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an

unreasonable number and length of rest periods; interacting appropriately with the general public; getting along with coworkers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. ECF Dkt. #12 at 315-316. Dr. Benninger reviewed the evidence in the file and unfortunately, the last page of his assessment is missing from the record. *Id*. at 318 (indicating that assessment is continued on page 4 but page 4 does not follow).

In his psychiatric review technique form which followed the mental RFC assessment, Dr. Benninger indicated that he based his assessment on Listing 12.04 for affective disorders, 12.06 for anxiety-related disorders, and 12.09 for substance addiction disorders. ECF Dkt. #12 at 319. He found that Plaintiff's mental disorders moderately limited her activities of daily living, caused moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and caused three episodes of decompensation each of extended duration. *Id*. at 329.

On March 17, 2009, Dr. Deeb indicated in a progress note that Plaintiff presented as anxious and depressed. ECF Dkt. #12 at 334. She stated that she was not suicidal but was very anxious. *Id*. On April 28, 2009, Plaintiff presented to the emergency room for worsening depression over the past few weeks. ECF Dkt. #12 at 351. She reported problems with her medications and noted significant decreases in her mood, sleep, interest, energy, concentration, appetite and increased feelings of helplessness and hopelessness. *Id*. Plaintiff was calm and cooperative, logical in thought, with a severely depressed mood and fair judgment and insight. *Id*. at 354. She was admitted to the hospital and medications were restarted and changed, she participated in group therapy and was discharged on May 1, 2009 with a diagnosis of bipolar disorder and depression and was seen as a low risk to herself and others. *Id.* at 351-352.

On June 1, 2009, Dr. Steiger, an agency reviewing psychologist, affirmed the prior findings by the state agency reviewing psychologists. ECF Dkt. #12 at 371. She noted that some of Plaintiff's past inpatient hospital stays were for detox. *Id.*

Also on June 1, 2009, Dr. Collins indicated in a follow-up progress note that Plaintiff had met with her former boss about cleaning the nightclub where she had once worked. ECF Dkt. #12 at 439. He noted that Plaintiff's counselor had stated that one month ago that Plaintiff was not doing well in that while Plaintiff remained sober, she was hospitalized for psychological problems. *Id.*

Dr. Collins noted that Plaintiff's insight and judgment had improved and she was visibly less depressed. *Id*. at 440.

On August 17, 2009, Dr. Collins noted that Plaintiff had been looking for work and her husband was eager to return to work. ECF Dkt. #12 at 444. Plaintiff reported having panic attacks. *Id*. Dr. Collins found that Plaintiff's insight and judgment were poor. *Id.* He noted that Plaintiff and her husband needed jobs. *Id*.

On August 24, 2009, Colleen Smith, Plaintiff's clinical counselor, and Dr. Faust, Plaintiff's treating psychologist, completed a Psychiatric/Psychological Questionnaire indicating that they began treating Plaintiff on December 18, 2006 and had last examined her on August 13, 2009. ECF Dkt. #12 at 376. They noted that Plaintiff was seen for treatment one to two times per month on an inconsistent basis. *Id*. Dr. Faust diagnosed Plaintiff with bipolar disorder, most recurrent episode depressed, severe and without psychotic features. *Id*. Dr. Faust and Ms. Smith found that Plaintiff had extremely bad days most of the time and was unable to function due to her severe depressive states that leave her feeling completely drained. *Id*. They noted that Plaintiff's manic states were resulting in severe anxiety and panic attacks. *Id*.

Dr. Faust's prognosis of Plaintiff's condition was guarded as they noted that she had problems following through with therapy goals due to a lack of support from her husband as he had his own medical issues. ECF Dkt. #12 at 376. As the positive clinical findings supporting the diagnosis, Dr. Faust and Ms. Smith identified poor memory, sleep and mood disturbances, personality change, emotional lability, social withdrawal or isolation, decreased energy, recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, feelings of worthlessness or guilt, generalized persistent anxiety, hostility and irritability, suicidal ideation or attempts. *Id*. at 377. They also noted Plaintiff's depressed mood, memory impairment, attention and concentration difficulties, excessive crying, low self-esteem, feelings of guilt and hopelessness, easy distractability, forgetfulness and her manic episodes as her primary symptoms. *Id*. at 378. They further noted Plaintiff's three hospitalizations for her symptoms in January 2007, October 2008 and April of 2009. *Id*. They concluded that Plaintiff's symptoms and functional limitations were

consistent with her emotional impairments, the impairments would last at least twelve months, and Plaintiff was not a malingerer. *Id*. at 378, 382.

Dr. Faust and Ms. Smith opined that Plaintiff was markedly limited in the areas of: remembering locations and work-like procedures; understanding and remembering one or two step instructions; understanding, remembering and executing detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule or maintaining regular attendance or promptness; sustaining an ordinary routine without supervision; completing a normal workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. ECF Dkt. #12 at 379-381.  They found Plaintiff moderately limited in the areas of: carrying out simple one or two step instructions; working in coordination with or proximity to others without being distracted by them; making simple work-related decisions; interacting appropriately with the general public; asking simple questions or requesting assistance; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; in responding appropriately to changes in the work setting; and in setting realistic goals or making plans independently. *Id*.

Dr. Faust and Ms. Smith also explained that Plaintiff experienced episodes of deterioration and decompensation in work or work-like settings which have caused her to withdraw or have caused an exacerbation of her symptoms in that she had been unable to hold down a job since beginning therapy in December of 2006.  ECF Dkt. #12 at 381.  They explained that Plaintiff becomes overwhelmed by basic tasks which often results in a panic attack and rest afterwards.  *Id*. Dr. Faust and Ms. Smith opined that Plaintiff was incapable of even "low stress" work.  *Id*. at 382. They further indicated that Plaintiff could not handle low stress household activities such as cooking, cleaning, and laundry.  *Id*. Dr. Faust and Ms. Smith opined that Plaintiff would miss work more than three times per month due to her impairments.  *Id*. at 384.

On September 28, 2009, Dr. Collins indicated in a progress note that Plaintiff wanted to talk about her medications because she was taking numerous medications but was not feeling much of

a benefit from them. ECF Dkt. #12 at 449. Plaintiff reported that her husband was still in therapy for his back but helped with the children when she was not feeling well. *Id*. They talked about her attempting to return to work. *Id*. Dr. Collins adjusted Plaintiff's medications. *Id*. at 450.

On October 26, 2009, Dr. Collins' progress notes indicated that Plaintiff was not feeling any better and was quite depressed. ECF Dkt. #12 at 454. Plaintiff reported that she felt a need to hide and escape and she cried a lot over small things. *Id*. She further stated that she was irritable and it was hard to concentrate. *Id*. Dr. Collins readjusted her medications. *Id*.

Dr. Collins' April 12, 2010 progress note indicated that Plaintiff was doing poorly and was anxious and agitated. ECF Dkt. #12 at 458. She indicated that the pharmacy called her and told her that they had given her the wrong dosage of Ambilify that she had been taking. *Id*. She had stopped taking another medication because she thought that it was the cause of her newer symptoms. *Id*. Dr. Collins again adjusted Plaintiff's medications and noted that "[s]he is a brittle patient who needs frequent followup at this point." *Id*. at 459.

On May 10, 2010, Dr. Collins noted that Plaintiff was working part-time at a graphic place two days per week. ECF Dkt. #12 at 464. Plaintiff reported that she was very much on edge, had no energy because she cannot sleep at night. *Id*. She stated that she was short with her children, which bothered her and she was agitated and very negative. *Id*. She did not feel that the medications were working. *Id*. Dr. Collins adjusted Plaintiff's medications. *Id*. at 465.

On May 18, 2010, Dr. Collins' progress note indicated that Plaintiff presented very nervous, and was nasty, negative, short and sighing a lot. ECF Dkt. #12 at 470. She said she was crying a lot and that everything aggravated her. *Id*. Dr. Collins diagnosed Plaintiff with bipolar disorder, acute manic phase. *Id*. Dr. Collins recommended that Plaintiff go to the hospital promptly. *Id*. at 479.

On June 14, 2010, Dr. Collins' progress notes indicate that Plaintiff had stayed at the hospital for one week and found it beneficial as it allowed her to focus and the medications helped her. ECF Dkt. #12 at 479. Plaintiff reported that she was no longer crying and she felt calm. *Id*.

On July 12, 2010, Dr. Collins noted that Plaintiff was feeling better and the medications seemed to be working rather well. ECF Dkt. #12 at 485.

On August 5, 2010, Dr. Deeb wrote a letter indicating that Plaintiff suffered from severe bipolar disorder that impacted her daily life and resulted in multiple admissions to the psych floor at the hospital. ECF Dkt. #12 at 385. He opined that her condition was disabling and she could not work. *Id.* He referred to the psychological reports for further details. *Id.* Dr. Deeb's treatment notes show numerous complaints by Plaintiff as to feeling anxious and depressed with various adjustments made to her medications. *Id.* at 208, 209, 387, 389.

On March 10, 2011, Dr. Faust and Ms. Smith completed a Psychiatric/Psychological Impairment Questionnaire regarding Plaintiff. ECF Dkt. #12 at 391-398. They indicated that they had been treating Plaintiff from December 18, 2006 through her last examination on February 15, 2011. *Id.* They noted that Plaintiff's consistency of treatment varied due to her family obligations and her depressive symptoms. *Id.* Dr. Faust diagnosed Plaintiff with major depressive disorder, single episode, without psychotic features, and found that Plaintiff's depressive symptoms caused extreme difficulty in functioning. *Id.* Dr. Faust and Ms. Smith noted that Plaintiff had secured part-time employment, but she had difficulty managing the job because of her anxiety and panic attacks. *Id*

Their prognosis of Plaintiff's condition was guarded as they noted that she had problems following through with therapy goals and appeared to take steps forward followed by periods of stagnation. ECF Dkt. #12 at 391. As to the positive clinical findings supporting the diagnosis, they identified poor memory, sleep and mood disturbances, personality change, emotional lability, social withdrawal or isolation, decreased energy, recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, feelings of worthlessness or guilt, generalized persistent anxiety, hostility and irritability, suicial ideation or attempts. *Id.* at 392. They also noted Plaintiff's depressed mood, anxiety, memory impairment, attention difficulty, excessive crying, low self-esteem, feelings of guilt and hopelessness, forgetfulness and sleep disturbances as her primary symptoms. *Id.* at 393. They further noted Plaintiff's three hospitalizations for her symptoms in January 2007, October 2008 and April of 2009. *Id.* They concluded that Plaintiff's symptoms and functional limitations were consistent with her emotional impairments, the impairments would last at least twelve months, and they found that Plaintiff was not a malingerer. *Id.* at 393, 397.

-10-

Dr. Faust and Ms. Smith found that Plaintiff was markedly limited in the areas of: understanding, remembering and executing detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule or maintaining regular attendance or promptness; completing a normal workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; asking simple questions or requesting assistance; accepting instructions; and responding appropriately to criticism from supervisors. ECF Dkt. #12 at 394-395. Plaintiff was also found to be moderately limited in: understanding and remembering locations and work-like procedures; understanding, remembering and executing one or two step instructions; sustaining an ordinary routine without supervision; working in coordination with or proximity to others without being distracted; making simple work-related decisions; interacting appropriately with the general public; getting along with coworkers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and in responding appropriately to changes in the work setting. *Id*.

Dr. Faust and Ms. Smith also explained that Plaintiff experienced episodes of deterioration and decompensation in work or work-like settings which have caused her to withdraw or have caused an exacerbation of her symptoms in that she worked part-time but "often gets overwhelmed by simple tasks at work resulting in anxiety/panic attacks. Therapy goals have addressed anxiety reducing techniques in work environment." ECF Dkt.#12 at 396. While finding that Plaintiff was capable of low work stress, Dr. Faust and Ms. Smith noted that Plaintiff had been able to deal with part-time work stresses with minimal issues. *Id*. at 397. They indicated that therapy continued to address Plaintiff's depressive symptoms and managing her anxiety at work and stated that Plaintiff's "work schedule is conducive to mental health concerns as ct is able to work one day followed by multiple days off." *Id*. They opined that Plaintiff would miss work more than three times per month due to her impairments. *Id*. at 398.

On September 8, 2011, Dr. Collins indicated in a letter that it was his opinion that Plaintiff was totally disabled without consideration of her drug or alcohol use. ECF Dkt. #12 at 490. Dr.

-11-

Collins indicated that Plaintiff's drug or alcohol use was not material because Plaintiff was not currently using drugs and/or alcohol and remained disabled. *Id.*

### III. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff, who was forty-two years old on the date of the hearing, suffered from bipolar disorder, depression and anxiety-related disorders, which qualified as severe impairments under 20 C.F.R. §404.1520(c). ECF Dkt. #12 at 24. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§404.1520(d), 404.1525, and 404.1525 ("Listings"). *Id.* at 25.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> she is able meet basic interaction demands with peers, supervisors, and the general public. She is able to understand, remember, and follow directions for routine tasks. She is able to maintain attention and concentration in competitive work and withstand stress. She is best suited for work that is simple and repetitive in nature and the job should not include any production quotas and only superficial interaction with others.

ECF Dkt. #12 at 26. The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff can perform, including that of the representative occupations of retail marker, housekeeper, and garment sorter. *Id.* at 30. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

### IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in

       20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

  4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

  5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.      STANDARD OF REVIEW

    Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

    The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th

Cir.2001). Thus, the ALJ has a " 'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

## VI.    ANALYSIS

### A.    TREATING PHYSICIAN RULE

Plaintiff first asserts that the ALJ failed to properly consider and weigh the opinions from her treating psychologist, Dr. Faust, and her therapist, Ms. Smith.  ECF Dkt. #15 at 13-17.  Plaintiff contends that while the ALJ indicated that he found the opinions of Dr. Faust and Ms. Smith consistent with and supported by the record, he nevertheless gave their opinions only "some weight" rather than controlling weight and failed to incorporate their limitations into his RFC for Plaintiff. *Id*. Plaintiff also complains that the ALJ failed to explain his reasons for attributing less than controlling weight to the opinions of Dr. Faust.  *Id.*

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  If  that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.  *Id.*

-14-

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

On the other hand, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' " *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 176 (6th Cir. 2013). The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.* citing 20 C.F.R. §404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* citing §404.1527(c)(6).

The ALJ in this case noted that Dr. Faust had completed a questionnaire in March 2011 and Dr. Faust had found that Plaintiff was moderately to markedly limited in most areas. ECF Dkt. #12 at 32. The ALJ further stated that Dr. Faust "also reported that the claimant was capable of low stress work, as indicated by her part-time work activities. The undersigned gives this opinion some weight as it is consistent with and supported by the substantial medical evidence of record." *Id.* Thus, while the ALJ found that the March 2011 opinion of Dr. Faust met both prongs of the test for controlling weight, he nevertheless decided to attribute less than controlling weight to the opinion and failed to provide "good reasons" for doing so. Moreover, the ALJ completely failed to address

the opinion provided by Dr. Faust and Ms. Smith dated August 24, 2009 which set forth much more restrictive limitations.  ECF Dkt. #12 at 376-384.

The ALJ indicated that he gave the most weight to the opinions of two state agency reviewing psychological consultants.  ECF Dkt. #12 at 32.  However, in attributing "significant weight" to these opinions, the ALJ merely stated that those opinions "are consistent with and supported by the substantial medical evidence of record and the claimant's daily activities." *Id.*  The ALJ failed to cite to any of the medical evidence supporting his conclusion and merely cited to Plaintiff's daily activities as preparing meals, doing household chores, shopping, caring for her personal hygiene, handling the finances, talking with her family on the telephone, caring for her children, helping the children with homework and taking care of a younger child all day.  *Id.* at 31.

The Sixth Circuit Court of Appeals addressed both of these issues in *Gayheart v. Commissioner of Social Security*, 710 F.3d at 176.  In that case, the Court found that:

> The record, according to the ALJ, is clear that Gayheart's "alleged anxiety has not prevented him from leaving home, driving, keeping medical appointments, visiting friends and neighbors, shopping with his wife, and attending three hearings." Although not clearly stated, the apparent implication is that these activities are inconsistent with the social and daily living restrictions noted in [the treating physician's] opinions.
>
> But the ALJ does not contend, and the record does not suggest, that Gayheart could do any of these activities on a sustained basis, which is how the functional limitations of mental impairments are to be assessed. See 20 C.F.R. §404.1520a(c)(2); 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.00 ("Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals."). Gayheart's ability to visit his aunt and uncle, who live on his street, and to receive occasional visits from his neighbor does not undermine [the treating physician's] opinion that Gayheart's ability to interact independently and appropriately with others on a sustained basis is markedly impaired. The same is true of his ability to accompany his wife on grocery-shopping trips once per month. These activities would be relevant if they suggested that Gayheart could do something on a sustained basis that is inconsistent with [the treating physician's] opinions. But they do not.

*Id.* at 11.  The Court further observed:

> Similarly, the ALJ does not identify the substantial evidence that is purportedly inconsistent with [the treating physician's] opinions. Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force

-16-

> because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id.* at *10.

Thus, to the extent that the ALJ in this case gave less weight to Dr. Faust's opinions because they were inconsistent with the opinions of the nontreating and nonexamining sources, this conclusion is insufficient to meet the treating physician rule.  And even assuming that the ALJ intended to give controlling weight to only the latter part of Dr. Faust's March 10, 2011 opinion regarding Plaintiff's ability to perform low stress work on a part time basis, he failed to clarify that he was giving controlling weight to only this part of the opinion and he failed to explain why he was not giving controlling weight to the other parts of the opinion   And to the extent that the ALJ had intended to credit only that part of the opinion that Plaintiff was capable of low stress work, the ALJ provided no evidence in the record that supported his assertion that Plaintiff's ability to work part-time showed an ability to perform full-time work on a sustained basis.  In fact, both Dr. Faust and Ms. Smith noted that Plaintiff still had difficulty with part-time work because of her anxiety and panic attacks, and Dr. Faust found that her part-time "work schedule is conducive to mental health concerns as ct is able to work one day followed by multiple days off."  *Id*. at 398.  The ALJ fails to explain how this translates into an ability to perform full-time work on a sustained basis.  The Court finds that ALJ's generic statement that he was affording only "some weight" to the opinion of Dr. Faust because "it is consistent with and supported by the substantial medical evidence of record" is insufficient to meet the treating physician rule.

Defendant asserts that Dr. Faust's opinion as to Plaintiff's work limitations is not entitled to controlling weight because no treatment notes accompanied the opinion.  ECF Dkt. #12 at 16.  However, the Court cannot accept this post-hoc rationalization since the ALJ did not cite to a lack of accompanying treatment notes as his reason for failing to give controlling weight to the opinion

-17-

and in fact found Dr. Faust's opinion supported by and consistent with the evidence of record. ECF Dkt. #12 at 32.

As the Sixth Circuit observed in *Gayheart*, "[i]n the end, a proper analysis of the record might not support giving controlling weight to the opinions of [the treating physician]," however, "even if [the treating physician's] opinions do not warrant controlling weight, they still must be weighed as the regulations prescribe. . ." *Gayheart* at 14. The same is true here. Accordingly, the Court finds that the ALJ violated the treating physician's rule by failing to articulate "good reasons" for giving only limited weight to the opinions of Dr. Faust.

The question thus arises as to whether the ALJ's error in failing to provide "good reasons" for not attributing controlling weight to Dr. Faust's opinion constitutes harmless error. In *Wilson*, the Sixth Circuit held that the good reasons requirement of the treating physician rule is an important procedural safeguard for claimants. However, the *Wilson* Court left open the possibility that a de minimis violation of the good reasons requirement may constitute harmless error, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." 378 F.3d at 547. The *Wilso*n Court noted that harmless error may also be found if the ALJ adopts the treating physician's opinion or makes findings consistent with it or if he has met the goal of § 1527(d)(2) even though he did not comply with the regulation's terms. *Id.*

In this case, the undersigned recommends that the Court find that Dr. Faust's opinion is not so patently deficient that it could not be credited. The assessment is thorough and contains clinical findings. In fact, the ALJ found it supported by and consistent with the record. Moreover, the ALJ did not adopt Dr. Faust's opinion as to Plaintiff's marked limitations in the areas of maintaining concentration and attention, performing activities within a schedule or with regular attendance and punctuality, or in completing a normal workweek without interruptions from her mental health condition. ECF Dkt. #12 at 394. Moreover, the ALJ did not acknowledge Dr. Faust's opinion that Plaintiff would miss more than three days of work per month due to her mental health condition, she experienced deterioration or decompensation in work like settings that caused her to withdraw from the situation or exacerbated her symptoms, or his finding that Plaintiff's part-time work causes her

-18-

to become overwhelmed at simple tasks and caused panic or anxiety attacks.  ECF Dkt.#12 at 397-398.  Nor did the ALJ address Dr. Faust's explanation that Plaintiff was capable of low work stress and was able to work at her part-time job with minimal issues because her work schedule of working one day followed by multiple days off was conducive to her mental health concerns.  *Id.* at 397.

Moreover, the goal behind the treating physician rule has not otherwise been met even though the ALJ failed to comply with the regulation.

For these reasons, the Court finds that the ALJ's failure to follow the treating physician rule is not harmless error and remand of this case is required.

### B.     OTHER ASSERTIONS OF ERROR

In her second assertion of error, Plaintiff contends that the ALJ failed to properly evaluate her credibility.  ECF Dkt. #15 at 17.  In her third claim, Plaintiff asserts that the ALJ erred in relying upon the VE's testimony because the testimony was based upon  the ALJ's hypothetical person that contained a mental RFC not supported by substantial evidence.

The Court reverses the determination on these issues and remands this case for reevaluation and further analysis as to these findings as well.  Since the ALJ based his mental RFC for Plaintiff in part upon the medical opinions that he improperly weighed and upon Plaintiff's ability to perform sustained work based upon the ability to perform some daily activities, the Court finds that the ALJ's credibility determination is not supported by substantial evidence. The Court therefore reverses the ALJ's decision concluding that Plaintiff's allegations of the intensity, persistence and functionally limiting effects of her impairments are not substantiated by the objective medical evidence and are not credible to the extent that they are inconsistent with his RFC.  Further, the ALJ's hypothetical person presented to the VE which evoked the VE's testimony relied upon the ALJ at Steps Four and Five is also lacking in substantial evidence because it was based upon a mental RFC that was not supported by substantial evidence.

### VII.   CONCLUSION

-19-

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the decision for reevaluation and further analysis in accordance with the treating physician rule, which in turn also requires reevaluation and analysis of the ALJ's credibility determination and his determination at Steps Four and Five of the sequential steps to evaluate entitlement to DIB.

DATE: May 29, 2013

        */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE